IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY., *et al.* <br> v. <br> CAREFREE LAND CHIROPRACTIC, LLC, *et al.* | Civil Action No. 18-cv-1279 |

## MEMORANDUM

Before this court is State Farm's motion for reconsideration of this court's order granting judgment of dismissal or, in the alternative, for leave to file an amended complaint.

## FACTS AND PROCEDURAL HISTORY

State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company ("State Farm") allege that Carefree Land Chiropractic ("Carefree") has engaged in a scheme to defraud State Farm by providing medically unnecessary services and treatments to 550 patients and submitting the claims for reimbursement to State Farm.[1] State Farm alleges that Carefree's patient records submitted as part of its claims for reimbursement are suspiciously similar to each other, and that Carefree fabricated test results and diagnoses, and subjected patients to a predetermined treatment plan not uniquely tailored to each individual patient.

On May 1, 2018, State Farm filed its complaint against Carefree alleging fraud and unjust enrichment, as well as requesting declaratory judgment. Carefree filed a motion to dismiss on June 28, 2018, which this court granted on December 11, 2018, holding that State Farm's complaint failed to satisfy Rule 8(a)(2) as well as Rule 9(b)'s heightened pleading requirements for fraud. ECF 50, at 4. In particular, the court noted that Carefree failed to state which treatments and specific documents it alleged were fraudulent, and which physicians it alleged acted fraudulently. *Id.* at 5. Rather, State Farm relied solely on its statistical analysis regarding

---

[1] The facts of this case are more extensively recounted in the court's December 11, 2018, Memorandum Opinion, ECF 50.

1

the similarity of the records to demonstrate that they were fraudulent. *Id.* at 5–6.

## STANDARD OF REVIEW

### I. Motion for Reconsideration

Under Rule 59(e), there are "three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Sloas v. CSX Transp. Inc.*, 616 F.3d 380, 385 n.2 (4th Cir. 2010) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993)). "The district court has considerable discretion in deciding whether to modify or amend a judgment." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008). Generally, however, it is a remedy that should be used sparingly. *Id* (citing *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

### II. Motion for Leave to Amend

Leave to amend should be freely granted under Rule 15(a), and amendments are generally accepted absent futility, undue prejudice, or bad faith. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (explaning that leave to amend, even post-judgment, "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile."). A court "may deny leave if amending the complaint would be futile – that is, 'if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" *U.S. ex rel. Wilson v. Kellog Brown and Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007)).

## DISCUSSION

### I. Motion for Reconsideration

State Farm argues that this court should grant reconsideration because (1) it committed an error of law in incorrectly applying *Nathan v. Takeda Pharmaceuticals North America, Inc.*, 707 F.3d 451 (4th Cir. 2013), *see* ECF 52-1, at 7–10; ECF 54, at 3, and (2) a recent intervening Fourth Circuit decision, *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190 (4th Cir. 2018) clarifies *Nathan*'s limited holding. ECF 54, at 3. In support of its motion, State Farm also provides other examples of federal courts have rejecting motions to dismiss in cases with similar allegations to this case. ECF 52-1, at 12. Carefree responds that State Farm fails to show a clear error of law, an intervening change in controlling law, or new evidence, and instead is merely asking for the court to "change its mind." ECF 53-1, at 2. It also claims that the examples cited by State Farm all "included specific factual accusations" of fraud "over and above" the alleged statistical similarities, making them unlike this case. *Id.* at 6.[2]

State Farm has failed to show that this court committed a clear error of law justifying reconsideration. Rather, State Farm disagrees with how this court applied *Nathan* and other Fourth Circuit precedent. This is not enough to justify the "extraordinary remedy" of reconsideration after judgment. Additionally, State Farm cites to examples of federal courts rejecting motions to dismiss fraud complaints; these opinions are from outside districts, are mostly unpublished, and many are several years old. Therefore, they do not constitute a recent intervening change in controlling law that would justify reconsideration.

---

[2] Both State Farm and Carefree have filed supplements to their pleadings. State Farm filed a supplement attaching an Order Denying Motion to Dismiss from the U.S. District Court for the Southern District of Florida, ECF 55, and Carefree filed a supplement attaching an Order on Defendants' Motion to Dismiss, also from the Southern District of Florida, ECF 60.

State Farm also argues that *United States ex rel. Grant v. United Airlines Inc.* is an intervening change in controlling law justifying reconsideration. *Grant* involved a qui tam action brought by David Grant against United Airlines based on Mr. Grant's observations of three practices that purportedly violated the False Claims Act. *Id.* at 194. The Fourth Circuit held that while Mr. Grant sufficiently alleged fraudulent conduct, he did not show that the "scheme necessarily led to the presentment of a false claim to the government for payment." *Id.* at 197. In discussing *Nathan*, the *Grant* court stated, "In *Nathan*, we held that Rule 9(b)'s particularity requirement 'does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the government.'" *Id.* at 196 (quoting *Nathan*, 707 F.3d at 457). Contrary to State Farm's contention, *Grant* does not limit the holding of *Nathan*; its description of the holding of *Nathan* is quoted directly from the opinion. This is not an intervening change in controlling law justifying reconsideration. Therefore, the court will deny State Farm's motion for reconsideration.

## II. Motion for Leave to Amend

State Farm also requests leave to amend its complaint. As part of its motion, it has submitted a proposed amended complaint, which provides more details about how the alleged fraudulent scheme worked, provides more examples of the similarity of patient records, and clarifies that State Farm alleges that all of the claims at issue are fraudulent. ECF 52-1, at 16–18. State Farm has added information about each patient's initials, claim number, and age in the master summary chart, *see* Exhibit A of the proposed amended complaint, and has attached specific examples of the alleged fraudulent bills and records, including "ten examples of patients

4

who complain of pain on all four spinal regions (neck, upper back, mid back and lower back)" and "ten examples of patients who are reported as having virtually identical positive orthopedic testing results," *see* Exhibits B–G of the proposed amended complaint. According to State Farm, the proposed amended complaint addresses this court's "two primary concerns about the [original] complaint": that "the Complaint used 'statistical analysis' to plead fraud" and that "the Complaint did not identify which insurance claims were fraudulent." *Id.* at 16.

Carefree argues that the proposed amended complaint is futile because it "merely add[s] more words which say the same thing it originally argued." ECF 53-1, at 19. Specifically, Carefree argues that the additional examples of similarities in patient records is just further evidence that the records are substantially similar, a fact the court accepted as true anyway, *id.* at 21, and does not address the issue that "[t]he alleged similarity across all of the records is still the sole 'fact' offered to support a conclusion that all of the records are false." *Id.* Further, the amended complaint fails to provide context for the statistical patterns by explaining what should be expected in a legitimate treatment facility, and instead makes "the same conclusory accusations originally made . . . that treatment plans, findings, and diagnoses *should vary* in some undefined way." *Id.* at 22.

The central question is whether the amended complaint satisfies the pleading standards in the Federal Rules of Civil Procedure. Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See State Farm Mutual Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 563 (D. Md. 2019) ("In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where and how: the first paragraph of any newspaper story.") (internal quotation and citation omitted). The purpose of Rule 9(b) is to put defendants on notice of the alleged fraudulent conduct, protect defendants

5

from frivolous suits, eliminate fraud actions where all facts are learned in discovery, and protect defendants from harm to their goodwill and reputation. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal citations omitted). Consequently, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Slade Healthcare*, 381 F. Supp. 3d at 563 (quoting *Harrison*, 176 F.3d at 784).

In Exhibit A of the proposed amended complaint, State Farm identifies each record they contend is fraudulent. In doing so, they have pled with particularity the time, place and contents of the alleged false representations, as well as the identity of the person making the misrepresentation. *See Humana Inc. v. Ameritox, LLC*, 267 F. Supp. 3d 669, 677 (M.D.N.C. 2017) (finding the complaint sufficiently particular where the insurance company gave a drug testing provider alleged to have fraudulently submitted claims for reimbursement "sufficient notice that it challenges only those Ameritox submissions that were duplicative, lacked a medical provider's direction, were medically unnecessary, and/or lacked proper documentation.").

In its proposed amended complaint, State Farm still relies mainly on the substantial similarities between the patient records to plead its allegations of fraud. State Farm, however, adds more detail to the allegations of substantial similarities, including by providing examples of patients with virtually identical descriptions of pain, *see* proposed amended complaint ¶ 48–50, orthopedic test results, *id.* at ¶ 51–53, neurological test results, *id.* at ¶ 54–56, cervical spine x-ray results, *id.* at ¶ 57–60, treatment plans, *id.* at ¶ 61–64, and responses to the treatment plans, *id.* at ¶ 66–67. *See also id.*, Ex. B–G. Further, State Farm alleges some internal inconsistencies within the records. For example, the amended complaint alleges that "[t]he Final Reports also

6

reported virtually every patient had residual weakness, predisoposition to future injury and progressive arthritic degeneration, while simultaneously reporting virtually every patient had neurological and orthopedic testing results 'within normal limits.' These findings are internally inconsistent." *Id.* ¶ 67. It also alleges that, while virtually every patient (503 of 505) who had an x-ray of the cervical spine had a "break in the continuity of the George's Line," which "represents an instability of the spine and is contraindicative to the performance of chiropractic manipulations to the neck," Carefree nonetheless submitted daily notes documenting "performance of chiropractic manipulations to the cervical spine for virtually every patient with that finding." *Id.* ¶ 57–58. Additionally, Carefree also purported "to conduct therapeutic exercises with the patients on some visits, but [did] not document the therapeutic exercises they purportedly provide[d] in the Daily Visit Notes." *Id.* ¶ 65.

Two cases, although outside of the Fourth Circuit, help explain the factual allegations necessary to satisfy the pleading requirements of Rule 9(b). *Allstate Insurance Co. v. Advanced Health Professionals, P.C.* involved a similar situation as here, where Advanced Health Professionals was alleged to have submitted false medical invoices to Allstate for reimbursement. 256 F.R.D. 49, 50 (D. Conn. 2008). The amended complaint contained various allegations of fraud, including allegations that the defendants engaged in false diagnostic testing and created exaggerated, misrepresented, and fabricated reports. *Id.* at 53–54. Allstate also included exemplar claims which they alleged showed inaccurate and deceptive documentation, invoices containing charges not supported by the patient's treatment records, and evidence of treatment inappropriate for the patient's conditions (such as age and pregnancy). *Id.* at 54–59. The judge, however, found the complaint did not satisfy the pleading requirements of Rule 9(b), as it gave no "factual explanation of why the statements were fraudulent." *Id.* at 59 (internal

citations omitted). The complaint did not "explain what is problematic about the treatment supporting an inference of fraud, or why the descriptions and acronyms utilized implicate fraudulent conduct" nor did it "explain why the treatment was unnecessary, why seeking payment for unnecessary (or worthless) treatment actually rendered is fraudulent, or why Defendants' submission of bills listing such treatment constitutes fraud, as distinguished from challenges to choice and proficiency of medical treatment rendered, manifested by the records themselves." *Id.* at 59–60. The judge noted that there were no allegations that Advanced Health did not actually perform the services, or that they were not licensed to perform the services they billed for, which would support an inference of fraud. *Id.* at 60–61. In sum, the judge found Allstate's allegations conclusory: "an *allegation* that an invoice was 'fraudulent' cannot form the basis of a *conclusion* that the invoice was 'fraudulent.'" *Id.* at 61.

*Metropolitan Property & Casualty Insurance Co. v. Savin Hill Family Chiropractic, Inc.* also involved allegations that a health provider "engaged in a fraudulent scheme to obtain insurance benefits" by billing for unreasonable, unnecessary, or not rendered chiropractic treatment. 266 F. Supp. 3d 502, 511 (D. Mass. 2017). There, the judge found the complaint satisfied the pleading requirements of Rule 9(b). The insurance company showed "specific instances in which certain Chiropractor Defendants recorded administering chiropractic treatment to the Plaintiffs' claimants that allegedly, based on patient testimony, was not rendered." *Id.* at 532. For each of the alleged fraudulent bills, Metropolitan Property indicated "the basis for the Plaintiffs' contention that each of the bills was fraudulent" such as whether it reflected "false, exaggerated and/or misleading evaluation findings/reports," "overutilization of chiropractic practice," "billing for treatment not rendered," or "billing for unauthorized chiropractic practice." *Id.* at 532. In a similar case in this district, Judge Hollander also found an

8

allegation of fraudulent billing sufficiently pled when it was supported with statistical analyses and also by a doctor's deposition testimony that "the defendants prematurely discharged at least some patients and refused to refer some patients for tests or treatments outside of the Clinics." *Slade Healthcare, Inc.*, 381 F. Supp. at 564; *see also State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*, 2016 WL 2897427, at *1–2 (E.D. Pa. 2016)[3] (finding sufficient allegations of fraud where medical providers submitted implausibly similar patient records and State Farm also alleged the use of a software that would randomize words in the records so as to avoid detection).

Here, State Farm's amended complaint is not devoid of factual allegations as in *Advanced Health Professionals*. To the contrary, State Farm has alleged both substantial similarities in the patient records and internal inconsistencies, and explained why these give rise to an inference that Carefree behaved fraudulently in providing and billing for medical services and treatments. The court also considers that the amended complaint does not rely solely on statistics, but also includes examples of internal inconsistencies within the patient records. While State Farm's amended complaint lacks the additional direct evidence of fraud present in *Savin Hill* and *Slade Healthcare*, where the plaintiffs had testimony of fraudulent practices to support their allegations, it more clearly alleges and supports with actual examples the nature of the fraud – the use of predetermined diagnoses and predetermined and unnecessary treatment protocols, to which nearly all patients reportedly responded in the same way, in order to exploit the patients' insurance benefits.

While a close call, this court finds that State Farm's amended complaint sufficiently alleges fraud.[4] Considering the purposes of Rule 9(b), the court finds that they are satisfied.

---

[3] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.
[4] According to Carefree, State Farm's manner of pleading has shifted the burden on them to raise a "factual dispute" with respect to each chart and prove that there was no fraud. ECF 53-1, at 12–14. This is not the case. The burden

Carefree is on notice of what records State Farm alleges to be fraudulent, and why it alleges them to be fraudulent. *See State Farm Mut. Ins. Co. v. Elite Health Centers Inc.*, 2017 WL 877396, at *7 (E.D. Mich. 2017) (finding, in a case with similar allegations as here, that the complaint's allegations and exhibits, including a chart detailing the fraudulent services purportedly rendered, put the defendants on sufficient notice). State Farm already has prediscovery evidence, through the patient records, that could support its allegations of fraud. Finally, this is not a frivolous suit or one seemingly designed to harm Carefree's goodwill and reputation. *See Harrison,* 176 F.3d at 784 (internal citations omitted).

Leave to amend, therefore, will not be futile. There has been no bad faith on the part of State Farm, and granting leave to amend will not be unduly prejudicial to Carefree. *See Matrix Capital,* 576 F. 3d at 193 (whether a post-judgment amendment is prejudicial depends on how far the case progressed before judgment was entered). As such, the court will grant State Farm's motion for leave to file an amended complaint.

## CONCLUSION

For the foregoing reasons, the court will deny State Farm's motion for reconsideration and grant State Farm's motion for leave to file an amended complaint. A separate order follows.

9/25/19
Date

Catherine C. Blake
United States District Judge

---

remains on State Farm to prove fraud by clear and convincing evidence. The court has determined only that the proposed amended complaint should not be rejected as futile.