IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *et al.* | *<br>*<br>*<br>*<br>*<br>* | Civil Action No. CCB-18-1279 |
| v. | | |
| CAREFREE LAND CHIROPRACTIC, *et al.* | * | |

**MEMORANDUM**

Before this court is Carefree's Motion to Dismiss State Farm's Amended Complaint. Carefree argues the claims asserted in the amended complaint are time-barred because (1) State Farm fails to allege any instances of fraud occuring within the statutory limit of three years of September 25, 2019, the date State Farm's amended complaint was docketed; and (2) State Farm fails to plead facts sufficient to establish equitable tolling. *See* ECF 65-1 at 1–2. State Farm counters that (1) under Federal Rule 15(c), its amended complaint relates back to its initial complaint, and therefore its operative date for statute of limitations purposes is May 1, 2018; (2) its claims are timely because the alleged fraud was not and could not have been discovered until within three years of the filing of the complaint; and (3) the three-year statute of limitations is tolled under the doctrine of fraudulent concealment. *See* ECF 66 at 10–12, 15–23. The matter has been fully briefed and no oral argument is necessary. For the reasons stated below, the motion will be denied.

**FACTS AND PROCEDURAL HISTORY**

State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "State Farm") allege that Carefree Land Chiropractic ("Carefree") engaged in a scheme to defraud State Farm by providing medically unnecessary services and treatments to patients and by billing State Farm for reimbursement. Over the course of more than ten years, State Farm reimbursed nearly 1.5 million dollars to Carefree for such claims.

1

In particular, State Farm alleges that Carefree has orchestrated a widespread scheme, starting in 2006 and continuing to the present, to defraud State Farm by failing to provide legitimate examinations of patients to determine their individual medical needs and instead subjecting patients to a predetermined course of treatment designed to maximize personal injury reimbursements. (ECF 60, Am. Compl. ¶¶ 1–2, 10). State Farm asserts that the documentation submitted by Carefree describing the treatment of its patients reveals that Carefree diagnosed all of the patients with the same or nearly the same injuries, treated the patients in identical or nearly identical ways, and concluded treatment with identical or nearly identical results. (*Id.* ¶¶ 40, 61, 67). Additionally, State Farm alleges that the records themselves did not accurately reflect the diagnoses, treatments, and results for each patient. (*Id.* ¶¶ 47–50).

To support its claims of fraud, State Farm provides its statistical analysis of 550 records from patients, ranging from teenagers to septuagenarians, who sought treatment at Carefree offices in multiple states. *See* ECF 52-4, Exhibit 1A.[1] State Farm alleges that the records, when analyzed as a whole, show a uniformity of diagnosis and treatment that is "not credible" given the wide range of circumstances presented by each patient. (Am. Compl. ¶ 50). For example, the records indicate that nearly every patient complained of either neck, upper back, mid-back, or lower back pain, and that 474 out of 550 patients complained of pain in all four regions. (*Id.* ¶¶ 48–49; *see generally* ECF 52-4). Further, the analysis revealed that 503 out of 505 patients for whom Carefree claimed to have performed an x-ray of the cervical spine were reported to have had a "break in the continuity of the George's Line," and that nearly all patients were prescribed the same treatment. *See* Am. Compl. ¶¶ 57–59, 61–62 (providing exemplar cases of this diagnosis and treatment plan).

State Farm asserts that Carefree prepared its records in such a manner that when viewed individually State Farm would reasonably believe treatment was medically necessary. (Am. Compl. ¶

---

[1] The amended complaint, ECF 60, states that "Exhibit A" contains this analysis. As docketed at ECF 60, the amended complaint contains no exhibits. The court assumes the exhibits attached to the motion for leave to file an amended complaint, ECF 52, are the relevant exhibits.

70).  Thus, it "did not discover and could not have reasonably discovered Defendants' scheme until it reviewed the patterns reflected in the thousands of bills and supporting documentation" submitted for reimbursement.  (*Id.* ¶ 71).  Once it conducted such a review, State Farm discovered the alleged fraud "within three years of the date of filing the Complaint."  (Id. ¶ 72).

On May 1, 2018, State Farm filed its initial complaint against Carefree alleging fraud and unjunst enrichment, and seeking a declaratory judgment.  (ECF 1).  Carefree filed a motion to dismiss on June 28, 2018, which this court granted on December 11, 2018, holding that State Farm's complaint failed to satisfy Rule 8(a)(2)'s requirements as well as Rule 9(b)'s heightened pleading requirements for fraud.  (ECF 50 at 4).  The court noted that Carefree failed to state which treatments and specific documents it alleged were fraudulent, and which physicians it alleged acted fraudulently.  (*Id.* at 5).  Instead, State Farm relied solely on its statistical analysis regarding the similarity of the records to demonstrate that they were fraudulent.  (*Id.* at 5–6).

On January 8, 2019, State Farm filed a motion for reconsideration, or, in the alternative, for leave to file an amended complaint, and attached the proposed amended complaint to its motion.  (ECF 52).  On September 25, 2019, the court denied the motion for reconsideration, but granted State Farm leave to file the amended complaint, concluding that the proposed amended complaint sufficiently alleged fraud by pointing to specific records alleged to be fraudulent and by identifying reasons why they may be fraudulent.  (ECF 62 at 9–10).  As a result, the amended complaint was docketed at that time.  (ECF 64, Am. Compl.).  In response, Carefree once again filed a motion to dismiss, this time challenging the amended complaint as time-barred.  *See* ECF 65.

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

Under Federal Rule 8(c), an affirmative defense based on the statute of limitations must be raised by the defendant, with the burden of establishing the affirmative defense resting on the defendant. *See* Fed. R. Civ. P. 8(c); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Thus, a motion to dismiss filed under Federal Rule 12(b)(6) "generally cannot reach the merits of an affirmative defense," except in the "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman*, 494 F.3d at 464; *see also Waugh Chapel South, LLC v. United Food and Commercial Workers Union Local 27*, 728 F.3d 354, 360 (4th Cir. 2013) (same).

## DISCUSSION

In a common law action for fraud and unjust enrichment, the statute of limitations requires a plaintiff to file the action within three years of the date it accrues. Md. Code. Ann., Cts. & Jud. Proc. § 5-101.[2] Under Maryland's discovery rule, "the cause of action accrues when the claimant in fact knows or reasonably should have known of the wrong." *Lumsden v. Design Tech Builders, Inc.*, 358

---

[2] As the basis for this court's subject matter jurisdiction is in diversity, *see* ECF 60, Am. Compl. ¶ 26, the court applies the substantive law of the forum state, including its statute of limitations. *Brown v. Am. Broad. Co., Inc.*, 704 F.2d 1296, 1299 (4th Cir. 1983).

Md. 435, 444 (2000) (citing *Poffenberger v. Risser*, 290 Md. 631, 636 (1981)).  A plaintiff knows or reasonably should have known of a wrong if (1) she had sufficient actual knowledge to put her on inquiry notice of a defendant's wrongs and (2) a reasonably diligent inquiry would have disclosed that there was a causal connection between the plaintiff's injuries and the defendant's wrongdoing.  *See Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 89–90 (2006) (articulating and applying this two-prong test).  Inquiry notice requires actual notice, either express or implied, and constructive notice will not suffice.  *Id*.  Actual express notice may be written or oral, while actual implied notice occurs when a plaintiff gains knowledge sufficient to prompt a reasonable person to inquire further.  *Id.* at 90.  Thus, at the minimum, a person has inquiry notice if she possesses facts "sufficient to cause a reasonable person to investigate further."  *Pennwalt Corp. v. Nasios*, 314 Md. 433, 449 (1988).

      *State Farm Mutual Automobile Insurance Company v. Slade Healthcare, Inc.* is instructive.  381 F. Supp. 3d 536 (D. Md. 2019).  In *Slade*, State Farm alleged that a different group of medical providers fraudulently submitted reimbursements for medical care.  *Id*. at 548–50.  Because each bill, when viewed in isolation, did not reveal its fraudulent nature, State Farm asserted that only when it viewed the billing patterns across more than 4,000 patient records did it suspect fraud.  *Id*. at 557.  The court stated that whether State Farm actually needed to review 4,000 records wasn't dispositive of the issue of inquiry notice since the court must, at the motion to dismiss stage, accept as true all of the factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff.  *Id*. at 558.  As a result, the court held that nothing on the face of State Farm's complaint indicated it had inquiry notice of the fraudulent activity, and the action could not be dismissed as untimely.  *Id*. at 559.  *Accord Metro. Prop. and Cas. Ins. Co. v. Savin Hill Family Chiropratic, Inc.*, 266 F. Supp. 3d 502, 540–41 (D. Mass. 2017) (report and recommendation) (holding that where a fraudulent insurance scheme was evident only when evaluating claims in the aggregate rather than individually, the issue as to whether and when a plaintiff should have discovered the scheme could not

5

be resolved on a motion to dismiss); *State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*, No. 15-cv-5929, 2016 WL 2897427, at * 3–4 (E.D. Pa. May 18, 2016) (similar).[3]

In this case, as in *Slade*, nothing on the face of State Farm's amended complaint demonstrates that the statute of limitations should bar this action. It is clear that "a reasonably diligent inquiry" would have disclosed the causal connection between State Farm's injury and Carefree's alleged wrongdoing; indeed, that is precisely what occurred when State Farm analyzed its thousands of documents in the aggregate. Yet, State Farm cannot be said to have had inquiry notice until it actually conducted—or reasonably should have conducted—its analysis. To the extent that Carefree challenges how many allegedly fraudulent reimbursements State Farm should have been in possession of before conducting such an analysis, that fact-intensive issue, as in *Slade*, is properly left for resolution at a subsequent stage of the proceedings. At the motion to dismiss stage, the court must accept State Farm's allegations as true, including its allegation—nearly identical to the one at issue in *Slade*—that it could not have "reasonably discovered Defendants' scheme until it reviewed the patterns reflected in the thousands of bills and supporting documentation." (Am. Compl. ¶¶ 71–72). Drawing all inferences in State Farm's favor, the court concludes State Farm's complaint does not indicate it had inquiry notice until it conducted its analysis. Therefore, because State Farm plausibly alleges that it discovered the fraud "within three years of the date of filing the Complaint," the complaint is not time barred on its face.[4] (*Id.* ¶ 72).

Carefree's argument that State Farm needed to make "distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that

---

[3] Unpublished opinions are cited for the soundness of their reasoning, not for their precedential value.
[4] The parties dispute several other issues regarding the timeliness of the amended complaint. Even if, as Carefree argues, the earlier date on which the initial complaint was filed controls, it is still plausible—drawing all inferences in State Farm's favor—that it did not discover the fraudulent activity until very near to May 1, 2018, which is less than three years before the amended complaint was docketed. Because the court holds that the discovery rule makes State Farm's claims timely, Carefree's other arguments about the operative date of the amended complaint are irrelevant to the disposition of this motion, and the court does not reach them. Further, while allegations of a pattern of fraudulent activity going back to 2006 may be relevant to establishing liability to survive a motion to dismiss, they do not necessarily entitle State Farm to damages for the entire period. The court therefore also reserves decision as to the period of time for which State Farm may seek damages.

the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been made" is unavailing.  (ECF 65-1 at 10 (citing *Minter v. Wells Fargo, Bank, N.A.*, 675 F. Supp. 2d 591, 596 (D. Md. 2009)).  That heightened pleading requirement applies when alleging fraudulent concealment, but none of the cases cited by Carefree demonstrate any heightened pleading requirements are necessary for a plaintiff to benefit from the application of Maryland's discovery rule.[5] *See* Md. Code Ann., Cts. and Jud. Proc. § 5-203 ("If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud."); *Green v. Pro Football, Inc.*, 31 F. Supp. 3d 714, 723–24 (D. Md. 2014) (analyzing separately whether the discovery rule or fraudulent concealment was adequately pled, and applying heightened requirements only to the claim of fraudulent concealment).  In this case, State Farm does allege fraudulent concealment, and its allegations relevant to the discovery rule appear in a section of its complaint titled "Fraudulent Concealment."  *See* Am. Compl. ¶¶ 68–73.  Nevertheless, even if State Farm did not plead with sufficient specificity the details of its reliance on the fraudulent concleament doctrine, that would not be fatal to its claims at this stage of the proceedings.  Equitable tolling under the doctrine of fraudulent concealment would only be necessary to save State Farm's claims if they were filed more than three years after they accrued under the discovery rule.  As explained above, though, State Farm pled that it did not and could not have discovered the fraud until within three years of filing its complaint.  If proven, those allegations would delay the onset of the limitations period from the date of the wrong to the date of discovery.  Thus, this is not one of the "relatively rare cases"

---

[5] First, *Supermarket of Marlinton, Inc., v. Meadow Gold Dairies, Inc.*, concerns the pleading requirements for fraudulent concealment in the context of a federal antitrust action where the plaintiff admitted in the complaint that the claim appeared to fall outside the limitations period.  71 F.3d 119, 121 (4th Cir. 1995).  Second, *Thelen v. Massachusetts Mut. Life Ins. Co.* directly supports this court's conclusion: "Historically, a claim generally accrued when the wrong was committed, not when it was discovered.  Now, however, under Maryland law it is generally said that the claim will not accrue until a plaintiff knows or reasonably should know of the wrong."  111 F. Supp. 2d 688, 692 (D. Md. 2000).

where it is possible to reach the merits of a statute of limitations defense on a 12(b)(6) motion.

*Goodman*, 494 F.3d at 464.

## CONCLUSION

For these reasons, the court will deny the motion to dismiss. A separate order follows.

| | |
|---|---|
|   9/15/20 |   /s/ |
| Date | Catherine C. Blake |
| | United States District Judge |