# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

STATE FARM MUTUAL AUTOMOBILE       *
INSURANCE COMPANY, *et al.*        *    Civil Action No. CCB-18-1279
                                   *
        v.                         *
                                   *
CAREFREE LAND CHIROPRACTIC, *et al.* *

## MEMORANDUM

This case concerns the allegedly fraudulent billing practices of the defendants, Carefree Land Chiropractic and related chiropractic practices, as well as the doctors they employ (collectively, "Carefree"). The plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "State Farm"), have filed an amended complaint (ECF 64) raising claims for fraud, for unjust enrichment, and for a declaratory judgment. Carefree has filed an answer and counterclaims (ECF 70) for a declaratory judgment, for defamation, for violations of 42 U.S.C. § 1981, and for intentional interference with contractual relations. Now pending before the court is State Farm's motion to dismiss Carefree's counterclaims. (ECF 72). The matter has been fully briefed[1] and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, the motion will be granted.

## FACTS AND PROCEDURAL HISTORY

In its amended complaint, State Farm alleges that Carefree engaged in a scheme to defraud State Farm by providing medically unnecessary services and treatments to patients and by billing State Farm for reimbursement. Over the course of more than ten years, State Farm reimbursed nearly 1.5 million dollars to Carefree for such claims. In particular, State Farm

---

[1] State Farm has also filed a motion to supplement their motion to dismiss (ECF 86) with supplemental authority. Carefree has responded (ECF 87) in an effort to distinguish their claims from those at issue in the supplemental authority. The court will grant the motion and considers the supplemental authority herein.

1

alleges that Carefree has orchestrated a widespread scheme, starting in 2006 and continuing to the present, in which it failed to provide legitimate examinations of patients to determine their individual medical needs and instead subjected patients to a predetermined course of treatment designed to maximize personal injury reimbursements. (ECF 64, Am. Compl. at ¶¶ 1–2, 10). State Farm asserts that the documentation submitted by Carefree describing the treatment of its patients reveals that Carefree diagnosed all of the patients with the same or nearly the same injuries, treated the patients in identical or nearly identical ways, and concluded treatment with identical or nearly identical results. (*Id.* at ¶¶ 40, 61, 67). Additionally, State Farm alleges that the records themselves did not accurately reflect the diagnoses, treatments, and results for each patient. (*Id.* at ¶¶ 47–50).

To support its claims of fraud, State Farm provides its statistical analysis of 550 records from patients, ranging from teenagers to septuagenarians, who sought treatment at Carefree offices in multiple states. (*See* ECF 52-4, Exhibit 1A). State Farm alleges that the records, when analyzed as a whole, show a uniformity of diagnosis and treatment that is "not credible" given the wide range of circumstances presented by each patient. (Am. Compl. at ¶ 50). For example, the records indicate that nearly every patient complained of either neck, upper back, mid-back, or lower back pain, and that 474 out of 550 patients complained of pain in all four regions. (*Id.* at ¶¶ 48–49; *see generally* ECF 52-4). Further, the analysis revealed that 503 out of 505 patients for whom Carefree claimed to have performed an x-ray of the cervical spine were reported to have had a "break in the continuity of the George's Line," and that nearly all patients were prescribed the same treatment. (*See* Am. Compl. at ¶¶ 57–59, 61–62 (providing examples of cases with this diagnosis and treatment plan)).

Carefree filed a motion to dismiss these claims, (ECF 65), which the court denied, (ECF 68). Carefree thereafter filed an answer to these allegations along with counterclaims for (1) a declaratory judgment; (2) defamation; (3) violations of 42 U.S.C. § 1981; and (4) intentional interference. (*See* ECF 70).

Carefree alleges that State Farm's lawsuit against it is part of a cost-reduction strategy recommended by the consulting firm McKinsey which has led to lawsuits against "countless other chiropractors across the country." (*Id.* at ¶¶ 85–92, 161). Carefree contends that the instant lawsuit is full of false accusations of non-individualized treatment "based on statistical analyses which apply equally to Caucasian doctors[.]" (*Id.* at ¶¶ 208–10). Thus, it argues State Farm could "have filed the identical lawsuit . . . against any number of Caucasian doctors" but chose not to only because it wished to target Korean immigrants. (*Id.*; *see also id.* at ¶¶ 163–64). Carefree does not identify any specific similarly situated Caucasian doctors.

Carefree also takes issue with State Farm's conduct after the filing of this lawsuit. It alleges that after State Farm filed this lawsuit, it began denying insurance payments to any Carefree doctors. (*See id.* at ¶ 133). State Farm then allegedly sent letters to Carefree's "patients and lawyers . . . stating that all of the bills for the patient's treatment are being denied because they are 'at issue' in State Farm's fraud lawsuit." (*Id.* at ¶ 167). Carefree's contention is that these letters referenced "wholly unrelated federal lawsuits"—the Slade Healthcare litigation and the Pinnacle Therapy Centers litigation—in a manner meant to falsely connect them to the "crimes and parties identified" therein (*id.* at ¶ 172), and that the "third-party recipients of [these] defamatory [letters] would (and have) understood the defendant's authorized representatives to be saying that [Carefree] engaged in the criminal conduct and conspiracies" described in those lawsuits, (*id.* at ¶ 200).

Carefree attached to its counterclaim examples of these letters, which are described in the chart below:

| Exhibit | To | From | Statement at Issue |
|---|---|---|---|
| ECF 70-2, Ex. B (12/13/2018) | Carefree Land Chiropractic | State Farm Claims | "[State Farm] is denying payment of these bill(s) because the matters giving rise to the charges are at issue in the action captioned [State Farm] v. Carefree Land Chiropractic, et al., Case No. 8:18-cv-01279-GJH (D. Md.)" |
| ECF 70-3, Ex. C at 1 (4/15/2020) | Min Chiropractic & Rehab | State Farm Claims | "[State Farm] is denying payment of these bill(s) because the matters giving rise to the charges are at issue in a pending civil lawsuit between Min Chiropractic & Rehab and State Farm." |
| ECF 70-3, Ex. C at 3 (4/15/2020) | Min Chiropractic & Rehab | State Farm Claims | "[State Farm] is denying payment of these bill(s) because the matters giving rise to the charges are at issue in the action captioned [State Farm] v. Pinnacle Therapy Centers, Inc., et al., Case No. 1:19-cv-01036-GLR (D. Md.)." |
| ECF 70-3, Ex. C at 6 (4/15/2020) | N/A | State Farm SIU | Allegedly addressed to "W.C. c/o Jezic & Moyse Law Firm" |
| ECF 70-4, Ex. D at 1 (6/17/2020); *id.* at 2 (6/17/2020); *id.* at 3 (1/16/2020) | Min Chiropractic & Rehab | State Farm Claims | "[State Farm] is denying payment of these bill(s) because the matters giving rise to the charges are at issue in the action captioned [State Farm] v. Slade Healthcare, Inc., Case No. 1:17-cv-03696-ELH (D. Md.)" |
| ECF 70-5, Ex. E (6/17/2020) | Law Offices of David Marks | State Farm Claims | "[State Farm] is denying payment of these bill(s) because the matters giving rise to the charges are at issue in a pending civil lawsuit between Min Chiropractic & Rehab and State Farm." |

To summarize, most of the letters were addressed to Carefree itself or to Min Chiropractic—both named defendants in this action. The set of letters attached as Exhibit C were likewise sent to named defendants, but State Farm contends that the "explanation of benefits

issued simultaneously with the letters [was] addressed to the patient's law firm," which Carefree believes is evidence that "State Farm was communicating its false claims not just directly to [Carefree] and their employees, but also to patients and their attorneys." (ECF 70 at ¶ 170). The explanation of benefits appended to Exhibit C is actually titled an "Explanation of Review"—language which is consistent with the letters in Exhibit C, which reference an attached "Explanation of Review." The Explanation of Review contains no single mailing address, but it does list the patient's mailing address—"W.C. c/o Jezic & Moyse Law Firm"—as well as the provider's mailing address—"Min Chiropractic & Rehab"—at the top of the first page. (ECF 70-3, Ex. C at 6). Though the Explanation of Review is printed on State Farm letterhead, it states it has issued from State Farm's "SIU" [Special Investigations Unit] office.[2] Additionally, one letter is addressed to a third party, David Marks, and references in a general fashion a "civil lawsuit between Min Chiropractic & Rehab and State Farm." (ECF 70-5, Ex. E).

Carefree alleges that the "sole purpose" of sending letters with references to the Slade Healthcare and Pinnacle Therapy Centers litigation was to "tar the reputation" of Carefree and its doctors and "deter patients from treating with them[.]" (ECF 70 at ¶ 179). As a result of receiving from State Farm these "knowingly false accusations of fraud," Carefree contends, "multiple patients . . . have stopped treating with [Carefree] and sought treatment elsewhere[.]" (*Id.* at ¶ 187; *see also id.* at ¶ 219). Carefree does not identify any of these patients, but rather states that "only State Farm is aware of . . . the identities of each patient who has stopped treating with [Carefree.]" (*Id.* at ¶ 188).

---

[2] Though not mentioned in the letter, the SIU is responsible for investigating fraud on behalf of State Farm. *See State Farm Mut. Auto. Ins. Co. v. Lugiano*, No. 15-575, 2016 WL 11701325, at *2 (E.D. Pa. June 14, 2016).

**STANDARD OF REVIEW**

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

**DISCUSSION**

State Farm argues that Carefree's counterclaims must be dismissed because the requested declarations do not allege an actual case or controversy and because Carefree has otherwise failed to state a claim upon which relief may be granted. The court will address each of Carefree's claims in turn.

I. **Declaratory Judgment**

The Federal Declaratory Judgment Act provides federal district courts the power "[i]n a case of actual controversy" to "declare the rights and other legal relations of any interested party

seeking such a declaration, whether or not relief is or could be sought." 28 U.S.C. § 2201(a). "This power has consistently been considered discretionary." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). A declaratory judgment action is appropriate when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted). One of the purposes of the act is to allow a party in an uncertain position to "gain relief from the insecurity caused by a potential suit waiting in the wings." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998). However, when declaratory relief "would be duplicative of claims already alleged, dismissal is warranted." *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 824 (D. Md. 2015) (quoting *Sharma v. OneWest Bank, FSB*, No. 11-0834, 2011 WL 5167762, at *6 (D. Md. Oct. 28, 2011)).

Carefree alleges that there is an actual controversy between the plaintiffs and the defendants entitling it to a declaratory judgment as to whether (1) the statistics and patterns of diagnoses and treatment it rendered are in fact anomalous when compared to similarly situated medical providers in Maryland, and (2) State Farm may deny payment of bills for treatment of its insureds based "solely on the fact that they exhibit some statistical similarity to treatment provided to other patients." (ECF 70 at ¶¶ 194–95).

The ongoing litigation between the parties establishes an actual controversy. Nevertheless, this is not the type of case that calls for a declaratory judgment. The court finds persuasive the reasoning of *Pediatrix Medical Group of Florida, Inc. v. Aetna Inc*. In that case, the plaintiffs sought a declaratory judgment "regarding the validity and legality of Defendants' regression methodology to justify its accusations of alleged improper billing practices." No. 18-60908-CIV-COHN/SELTZER, 2018 WL 4997092, at *5 (S.D. Fla. Aug. 27, 2018). The court

7

held that there was a substantial case or controversy, but dismissed the declaratory claim because the plaintiffs were asking the court to "declare that the evidentiary weight of Defendants' regression analysis is insufficient to support their affirmative claims against Plaintiffs relating to the alleged billing fraud." *Id*. at *6. This disputed issue, the court reasoned, was "not subject to resolution by declaratory judgment" because "[w]hether such analyses are persuasive enough to sustain [a fraud claim] in the absence of direct corroborating evidence is a question for the trier of fact." *Id.* at *5, *6.

Carefree's request for a declaratory judgment is very similar to the plaintiffs' request in *Pediatrix*: Carefree asks the court not to declare the "rights and legal relations" of adverse parties as the Declaratory Judgment Act contemplates, but rather to make an evidentiary finding that would defeat State Farm's preexisting affirmative claims. To the extent that the declaration sought by Carefree would tend to provide it with relief from the insecurity caused by a potential suit waiting in the wings, the court's disposition of State Farm's amended complaint would do the same. As Carefree cites to no cases entertaining similar declarations, the court declines to exercise its power to entertain Carefree's declaratory judgment claim, which is duplicative of State Farm's claims.[3]

## II. Defamation

To state a claim for defamation under Maryland law, a plaintiff must allege (1) a false and defamatory statement concerning another, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability

---

[3] Carefree argues, in part, that without a claim for a declaratory judgment regarding how anomalous its billing practices are as compared to other Maryland providers, it will not be able to seek such information in discovery. But even in the absence of its declaratory judgment claim, it may seek discovery to the extent provided for in the Federal Rules: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

of the statement irrespective of special harm or the existence of special harm caused by the publication. *See Harvey v. Cable News Network, Inc.*, --- F. Supp. 3d. ----, No. RDB-20-3068, 2021 WL 615138, at *8 (D. Md. Feb. 17, 2021). Every alleged defamatory statement constitutes a separate instance of defamation, *see Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011), which a plaintiff must specifically allege to satisfy federal pleading standards, *see Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 758 (D. Md. 2015). Whether a publication is defamatory is a question of law for the court, which is to read the publication as a whole since "a meaning not warranted by the whole publication should not be imputed." *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012) (quoting *Chesapeake Publ'g Corp. v. Williams*, 339 Md. 285, 295 (1995)).

In this case, Carefree alleges that State Farm sent letters to Carefree's "patients and lawyers . . . stating that all of the bills for the patient's treatment are being denied because they are 'at issue' in State Farm's fraud lawsuit." (ECF 70 at ¶ 167). Most of the letters were addressed exclusively to named defendants, though Carefree contends that one set of these letters, attached to their counterclaims as Exhibit C, were sent with an "explanation of benefits . . . addressed to the patient's law firm," which Carefree believes is evidence that "State Farm was communicating its false claims not just directly to [Carefree] and their employees, but also to patients and their attorneys." (*Id.* at ¶ 170). As a factual matter, it is not at all clear that this Explanation of Review was addressed to the patient's law firm.[4] Unlike all the letters attached as exhibits, the Explanation of Review has no single mailing address at the top of the first page, but rather lists both the patient's mailing address (care of his or her law firm) along with the

---

[4] A Rule 12(b)(6) motion focuses on the allegations in the claims, but "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), and courts may consider such documents without converting the motion into one for summary judgment, *see Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

provider's mailing address. (*See* ECF 70-3, Ex. C at 6). There is some indication that this Explanation of Review was sent to the provider, given that the letters in Exhibit C are dated consistently with the Explanation of Review and reference an enclosed Explanation of Review, (*see* ECF 70-3, Ex. C at 2, 4)—but there is no indication in the exhibits that the patient or his or her law firm received this Explanation of Review.[5] Even if they did, it is not certain that the letters referencing the Slade Healthcare and Pinnacle Therapy Centers litigation was included in the mailing. The one letter clearly addressed to a third party was sent to the law offices of David Marks concerning a client of his who received treatment at Min Chiropractic & Rehab, payment for which was being denied "because the matters giving rise to the charges are at issue in a pending civil lawsuit between Min Chiropractic & Rehabilitation, LLC and State Farm." (ECF 70-5, Ex. E).

A defamation claim may not rest on any letters published solely to named parties, as defamation requires publication to a third party; nor may a defamation claim rest solely on letters referencing this ongoing litigation, as defamation requires falsity. That dispenses with any letters that refer temperately to ongoing litigation between State Farm and the defendants named in this action. The more difficult question is whether Carefree's allegations that publication of a denial letter to the clients or their attorneys which also falsely references Carefree's involvement in two other cases (the Slade Healthcare litigation and the Pinnacle Therapy Centers litigation) is sufficient to support a defamation claim.[6] [7]

---

[5] As a general rule, "the exhibit prevails in the event of a conflict between an attached exhibit and the allegations of a complaint." *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016) (citing *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013)).

[6] State Farm contends it did not send any references to the Slade Healthcare or Pinnacle Therapy Centers litigation to patients or their attorneys. Based purely on the exhibits attached to

10

On that point, *State Farm Mutual Automobile Insurance Company v. Lugiano* is instructive. *See* No. 15-575, 2016 WL 11701325, at *3 (E.D. Pa. June 14, 2016). In that case, State Farm sued the defendant for fraudulent billing practices similar to those alleged in this action. *Id.* at *9. The defendant raised a counterclaim for defamation, arguing that by sending a letter "unnecessarily referring to civil litigation" between the parties, State Farm "meant to direct readers to an online record of this fraud-based lawsuit." *Id.* The court rejected this argument as a "hypothetical scenario" resting on the uncertain assumption that individual third parties would investigate and comprehend the litigation referenced in the letters—which, the court noted, were not sent on the insurance company's fraud investigation unit letterhead, did not identify the nature of the legal dispute, and did not mention any allegations of business impropriety. *Id.* Accordingly, the court held that the counter-plaintiff had failed to state a claim for defamation because the letters were not capable of a defamatory meaning. *Id.*

Here, the letters at issue were signed by a "claims specialist" rather than an investigator. The exception is the Explanation of Review, which is unsigned but did issue from an SIU office; however, the acronym "SIU" appears in small print and is not defined in the document, which is printed on State Farm letterhead otherwise identical to that used for the other letters. The letters also made no explicit reference to fraud and did not explain or reference the allegations in the Slade Healthcare or Pinnacle Therapy Centers litigation. Thus, any defamatory meaning to be derived from the letters, as in *Lugiano*, rests on the hypothetical assumption that Mr. Marks or

---

Carefree's counterclaims, State Farm may well be correct. But the court does not resolve this factual dispute here as it must accept Carefree's pleadings as true for the purposes of the pending motion.

[7] Additionally, Carefree contends in its opposition that falsely accusing someone of being a defendant in a lawsuit is "clearly capable of defamatory meaning" since "having been sued is a clear statement that the person is being accused of wrongdoing of some kind." Carefree cites no case law in support of this proposition.

11

the individual patient who may have received the correspondence would in fact perform independent research on the Slade Healthcare or Pinnacle Therapy Centers litigation and comprehend that State Farm's reference to those cases was meant to imply that Carefree was connected with the fraudulent activity alleged in those cases. But this is too precarious a perch to support the weight of a defamation claim, which requires specific allegations of defamation and which requires the court to look at the published letter as a whole. Accordingly, this counterclaim will be dismissed.

### III. 42 U.S.C. § 1981

42 U.S.C. § 1981 provides a "federal remedy against discrimination . . . on the basis of race." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1016 (2020) (quoting *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 459–60 (1975)). The statute provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

To state a claim under § 1981, a plaintiff must establish "purposeful, racially discriminatory actions that affect at least one of the contractual aspects" listed in the statute. *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999). Specifically, a plaintiff must plead facts showing (1) she is a member of a racial minority, (2) an intent to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). The Supreme Court has also clarified that to prevail on a § 1981 claim a plaintiff

must "initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast*, 140 S. Ct. at 1019 (2020).

Conclusory allegations of racial animus are not sufficient to satisfy the federal pleading standards. In *Avent v. Progressive Cas. Ins. Co.*, for example, the court dismissed a § 1981 claim based on allegations similar to those at issue here. No. 19-cv-10907 (JGK), 2021 WL 168500, at *4 (S.D.N.Y. Jan. 19, 2021). In that case, the plaintiff's allegations of racial animus were based on "a series of conclusory allegations," including that "every white person similarly situated" was treated differently, that the disparate treatment was part of a "larger design . . . to deny plaintiff full benefits of insurance and civil rights laws," and that the defendant used "race . . . to come to conclusions in favor" of a white claimant. *Id.* Therefore, the court held, the complaint failed to specifically allege "circumstances giving rise to a plausible inference of racially discriminatory intent." *Id.* (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)). And in *State Farm Mut. Auto. Ins. Co. v. Delaware Diagnostic & Rehabilitation Center*, the defendant filed a counterclaim under § 1981 alleging generally that State Farm targeted "doctors treating minority, low-income patients in metropolitan areas" and that State Farm "perform[ed] the same statistical analysis on the records of Caucasian doctors whose claims were not denied." No. 18-1806-MN-SRF, 2021 WL 1929365, at *10 (D. Del. May 13, 2021), *report and recommendation* adopted, 2021 WL 2212295 (D. Del. June 1, 2021). Additionally, not "a single Caucasian provider" who was similarly situated was identified in the counterclaim. *See id.* Thus, the court dismissed the § 1981 claim for, among other reasons, failing to plausibly allege that race was a but-for cause of plaintiff's injuries: "[a] naked assertion that the claims of similarly situated Caucasian doctors were not denied, devoid of further factual enhancement, does not

satisfy the Rule 8 pleading standard on a motion to dismiss." *Id.* (internal quotation marks omitted).

In this case, even if Carefree could establish the other elements of a § 1981 claim, it fails to plausibly establish that "but for race" it would "not have suffered the loss of a legally protected right." *Comcast*, 140 S. Ct. at 1019. Carefree alleges in conclusory fashion that it has been targeted with false accusations of non-individualized treatment "based on statistical analyses which apply equally to Caucasian doctors" and that State Farm could "have filed the identical lawsuit . . . against any number of Caucasian doctors" but chose not to only because it wished to target Korean immigrants. (ECF 70 at ¶¶ 208–10; *see also id.* at ¶¶ 163–64). As in *Delaware Diagnostic*, Carefree does not identify a single similarly situated Caucasian provider. And though the court must construe all allegations in the counterclaim in the light most favorable to Carefree, Carefree's allegation that State Farm has asserted "false fraud accusations" against "countless other chiropractors across the country" as part of a cost-reduction strategy belies their allegations of racial animus in the present case. (*Id.* at ¶¶ 85–92, 161). Carefree's allegations, similar to those at issue in *Avent* and *Delaware Diagnostic*, are too conclusory to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 547. Accordingly, this counterclaim will be dismissed.

IV. **Interference with Contractual Relations**

To state a claim for tortious interference, a plaintiff must allege (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss. *See Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 695 (D. Md. 2012). "Tortious or

deliberate intent to harm a plaintiff's business relationship is not alone sufficient to support an intentional interference claim. There must also be proof that the defendant's conduct . . . was accomplished through *improper means*." *Spengler v. Sears, Roebuck & Co.*, 163 Md. App. 220, 242 (2005) (internal quotation omitted) (emphasis in original). Therefore, "to recover for tortious interference with business or contractual relationships, the defendant's conduct must be independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Id.* at 242–43 (internal quotation omitted). This requires pleading conduct amounting to "violence or intimidation, defamation, injurious falsehoods or other fraud, violation of the criminal law, and institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Id.* at 243 (internal quotation omitted).

In this case, Carefree alleges only in general terms that the "sole purpose" of sending letters with references to the Slade Healthcare and Pinnacle Therapy Centers litigation was to "tar the reputation" of Carefree and its doctors and "deter patients from treating with them[.]"[8] (ECF 70 at ¶ 179). As a result of communicating these "knowingly false accusations of fraud," Carefree contends, "multiple patients who have received such letters have stopped treating with [Carefree] and sought treatment elsewhere[.]" (*Id.* at ¶ 187; *see also id.* at ¶ 219). Carefree does not identify any of these patients, but rather states that "only State Farm is aware of . . . the identities of each patient who has stopped treating with [Carefree.]" (*Id.* at ¶ 188). Including no other allegations of independently wrongful or unlawful conduct, Carefree relies on allegations of defamation—which this court has already held are insufficient to state a claim—to support its

---

[8] State Farm argues in its motion to dismiss that the references to other litigation occurred as a result of a typographical error and that it did not send letters containing these typographical errors to anyone other than named defendants. (*See* ECF 72-1 at 2–3). The court does not resolve this issue of fact; rather, it assumes for the purposes of this motion the truth of Carefree's well-pled allegations.

tortious interference claim. (*See also* ECF 76, Opp'n at 10 ("The Carefree Plaintiffs therefore allege . . . that the *specific people who have received State Farm's defamatory letters* have been and/or will be discouraged from seeking treatment with them." (emphasis in original))). Thus, even if Carefree could satisfy the other elements of a tortious interference claim, it cannot satisfy the third element and this claim must be dismissed.

## CONCLUSION

For these reasons, the court will grant State Farm's motion to dismiss Carefree's counterclaims. A separate Order follows.


| 7/14/21 | /S/ |
|---|---|
| Date | Catherine C. Blake |
| | United States District Judge |