IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STATE FARM MUTUAL AUTOMOBILE         *
INSURANCE COMPANY, *et al.*
                                      *        Civil Action No. CCB-18-1279
v.                                    *
                                      *
CAREFREE LAND CHIROPRACTIC, *et al.*
                                      *
**************

## MEMORANDUM

This case concerns the allegedly fraudulent billing practices of the defendants and counter-plaintiffs, Carefree Land Chiropractic and related chiropractic practices, as well as the doctors they employ (collectively, "Carefree"). The plaintiffs and counter-defendants, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "State Farm"), have pending claims for fraud, for unjust enrichment, and for a declaratory judgment. (ECF 64, Amended Complaint). After the court dismissed their first counterclaims (ECF 70, Counterclaims; ECF 88, Order), Carefree filed a corrected, amended counterclaim (ECF 101) for violations of 42 U.S.C. § 1981. Now pending before the court is State Farm's motion to dismiss Carefree's counterclaim (ECF 104) and Carefree's motion to file a surreply (ECF 107). The motions have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the court will grant State Farm's motion, and deny Carefree's motion.

## BACKGROUND

In their amended complaint, State Farm alleges that Carefree engaged in a scheme to defraud State Farm by providing medically unnecessary services and treatments to patients and by billing State Farm for reimbursement. Over the course of more than ten years, State Farm reimbursed nearly 1.5 million dollars to Carefree for such claims. In particular, State Farm alleges

1

that Carefree has orchestrated a widespread scheme, starting in 2006 and continuing to the present, in which it failed to provide legitimate examinations of patients to determine their individual medical needs and instead subjected patients to a predetermined course of treatment designed to maximize personal injury reimbursements. (ECF 64 ¶¶ 1–2, 10). State Farm asserts that the documentation submitted by Carefree describing the treatment of their patients reveals that Carefree diagnosed all of the patients with the same or nearly the same injuries, treated the patients in identical or nearly identical ways, and concluded treatment with identical or nearly identical results. (*Id.* ¶¶ 40, 61, 67). Additionally, State Farm alleges that the records themselves did not accurately reflect the diagnoses, treatments, and results for each patient. (*Id.* ¶¶ 47–50).

To support their claims of fraud, State Farm provides their statistical analysis of 550 records from patients, ranging from teenagers to septuagenarians, who sought treatment at Carefree offices in multiple states. (*See* ECF 52-4, Ex. 1A). State Farm alleges that the records, when analyzed as a whole, show a uniformity of diagnosis and treatment that is "not credible" given the wide range of circumstances presented by each patient. (ECF 64 ¶ 50). For example, the records indicate that nearly every patient complained of either neck, upper back, mid-back, or lower back pain, and that 474 out of 550 patients complained of pain in all four regions. (*Id.* ¶¶ 48–49). Further, the analysis revealed that 503 out of 505 patients for whom Carefree claimed to have performed an x-ray of the cervical spine were reported to have had a "break in the continuity of the George's Line," and that nearly all patients were prescribed the same treatment. (*See id.* ¶¶ 57–59, 61–62 (providing examples of cases with this diagnosis and treatment plan)).

Carefree filed a motion to dismiss these claims (ECF 65), which the court denied (ECF 68). Carefree thereafter filed an answer to these allegations along with counterclaims for (1) a

2

declaratory judgment; (2) defamation; (3) violations of 42 U.S.C. § 1981; and (4) intentional interference. (*See* ECF 70). On July 14, 2021, the court granted State Farm's motion to dismiss Carefree's counterclaims. (*See* ECF 88). Carefree filed a motion to file an amended counterclaim to reassert just their § 1981 claim (ECF 94), which the court granted (ECF 95). State Farm has moved to dismiss (ECF 104) Carefree's operative amended counterclaim (ECF 101), to which Carefree subsequently responded (ECF 105) and State Farm replied (ECF 106). Carefree then moved to file a surreply (ECF 107) to State Farm's motion to dismiss, which State Farm opposed (ECF 111, Opp'n; *see also* ECF 112, Reply). The court now considers both motions.

## DISCUSSION

### I.  Motion to Dismiss

#### a. Standard of Review

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda*

*Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012)).

### b. Causation Is Insufficiently Alleged

The first argument State Farm raises in moving to dismiss Carefree's amended counterclaim is that Carefree fails to assert facts sufficient to support the allegation that State Farm's 2015-2018 investigation of the chiropractic practices was motivated by race. "To prevail" in a § 1981 action, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Under this "but-for" standard, it is not enough to show that race played "some role" in the defendant's decisionmaking process. *Id.* at 1013, 1019 (vacating and remanding the Ninth Circuit opinion employing this lower standard).

Carefree's contention that State Farm "target[ed]" (ECF 101 ¶ 77) the counter-plaintiffs based on their race is conclusory and based entirely on a single line of a document from February 2013. This "Provider-Recaps" report, written by Chris Miler, a State Farm employee who handled State Farm's claims from Carefree in 2012, identified four "issues/concerns" regarding Carefree's claims. (ECF 94-1, Ex. 1, Provider-Recaps Doc.). These concerns were that: (1) medical records were "vague and suggest the presence of protocol treatment;" (2) medical records "suggest[ed] that the treatment plans remain the same from patient to patient;" (3) "[d]ischarge reports appear to be very similar from patient to patient;" and (4) "[t]here appears to be a strong correlation between [Carefree] and the Asian community;" "[a]ll of the patients in the sampled claims were Asian;" and there "appears to be a correlation between Carefree and" a particular attorney who "actively advertises his services to the Asian community." (*Id.* at 4-5; ECF 101 ¶¶ 78-79). This

4

fourth issue is the only citation to any mention of race by anyone affiliated with State Farm to be found in the amended complaint. (ECF 101 ¶¶ 78-84).

The amended counterclaim alleges that, on December 27, 2013, State Farm determined that "'the likelihood of prevailing in litigation' against Counterclaim Plaintiffs on the basis of alleged 'predetermined treatment' was 'low,' which led State Farm to conclude that Counterclaim Plaintiffs were 'not eligible for project prioritization.'" (*Id.* ¶ 94). Miler was subsequently transferred to another assignment in April 2014 (*id.* ¶ 98), and another employee, Scott Bowen, was tasked with continuing to monitor Carefree's claims (*id.* ¶ 99). By May 1, 2018, State Farm began denying payment for claims submitted by Carefree due to suspected fraud. (*Id.* ¶¶ 105, 117).

These allegations, collectively, constitute the entirety of the facts Carefree has pled with particularity to establish that discriminatory racial animus motivated State Farm's decision to continue investigation and ultimately deny their claims. (*See Id.* ¶ 102). This is insufficient to meet their burden as counter-plaintiffs to plausibly allege that, but for race, Carefree would not have suffered the loss of a legally protected right. *Comcast*, 140 S. Ct. at 1019.

First, Miler's mere mention of the race of the chiropractors' clients five years before the denial of claims cannot serve as the only evidence of discriminatory intent. The Provider-Recaps report itself contains three non-race-based, legitimate reasons why future State Farm employees may have investigated Carefree for fraud. *See FCS Advisors, LLC v. Missouri*, 929 F.3d 618, 622 (8th Cir. 2019) (holding a § 1981 claim to be "implausible, particularly given that [the] complaint identifies independent non-discriminatory reasons for [the defendant's] actions") (internal citation omitted). Even read in the light most favorable to movant, the Provider-Recaps report details vagueness and homogeneity across patient records indicative of potentially fraudulent activity in addition to the reference to race.

Carefree attempts to argue through briefing that the 2013 decision not to prioritize investigation absolved Carefree of the various reasons why State Farm believed their claims to be fraudulent, leaving only the race of the patient population as a reason to continue to target them. This is not the case. While State Farm temporarily deprioritized litigation or other action against Carefree (ECF 101 ¶ 94), this wording as described in the amended complaint does not suggest that the companies considered the 2013 investigation to have absolved Carefree of any wrongdoing. The other "issues/concerns" noted in the Provider-Recaps document continued to be relevant after 2013.[1]

Second, Carefree fails to sufficiently connect this brief discussion of race in 2013 to State Farm's subsequent 2018 decision to deny Carefree's claims. To rely on one document from five years prior requires too many inferences of animus and coordination to be plausible without additional factual allegations. *See Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 400 (4th Cir. 2021) (holding but-for causation was not established by one "factually-specific, non-conclusory allegation of racially-motivated conduct" which occurred approximately four months before the alleged discriminatory action). Here, the counter-plaintiffs recognize that Miler was transferred off the Carefree case, and a different employee, Bowen, continued the investigation over the five years leading up to the denial of claims. They provide no facts to suggest Bowen continued pursuing Carefree out of racial animus or because of company policy targeting providers to minority communities.[2] Moreover, the counter-plaintiffs' theory fails to address why State Farm,

---

[1] Carefree's argument that State Farm's other concerns are merely pretextual (*see* ECF 105-1 at 14) is conclusory and unsupported by specific factual allegation in their amended complaint (*see* ECF 101 ¶ 106).

[2] While Carefree expends substantial effort detailing the alleged discriminatory practices of State Farm and other suits against State Farm for similar alleged racial discrimination in the investigation and refusal to pay minority policyholders' claims (*see* ECF 101 ¶¶ 26-56), none of these allegations relate directly to the specific facts of the case at hand. Two of these citations are to the mere filing of other complaints against State Farm, which themselves do not contain any findings of fact. (*See id.* ¶¶ 55-56).

6

had their "true and primary motivation" (*id.* ¶ 77) been race-based since 2012, not pursued litigation or halted payments in 2013 upon the creation of the Provider-Recaps report. Lastly, such a theory fails to consider the more plausible explanation that additional patient data and meta-evaluation led State Farm to re-prioritize the fraud case against Carefree by 2018. Without additional and specific factual allegations, Carefree has failed to "state a claim to relief that is plausible on its face" under the applicable but-for causation standard that State Farm spent approximately five years, from 2013 to 2018, investigating and eventually denying claims because their investigator noticed the race of their patient population. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009).

As the counter-plaintiffs have failed to sufficiently allege causation to support their § 1981 claim, the court declines to address the additional arguments for dismissal raised by State Farm.[3]

## II. Motion to File a Surreply

### a. Standard of Review

"Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Local Rule 105.2(a) (D. Md. 2021). A court may permit a surreply "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D. Md. 2003).

### b. No New Issue of Fact or Law Merits a Surreply

In moving to file a surreply to State Farm's motion to dismiss, Carefree contends that State Farm raised new issues of both fact and law in their reply.

#### 1. Issue of Causation

---

[3] In their response to State Farm's motion to dismiss, Carefree claims that State Farm failed to respond to the allegation that State Farm violated Md. Code Ann., Ins. § 19-505. (ECF 105-1 at 16-17). Carefree, however, did not bring any claim under the Maryland Insurance Code, and State Farm was under no obligation to address this in their motion to dismiss Carefree's § 1981 claim.

7

First, Carefree argues that State Farm changed their position from there being a "causal break" around 2012-2013 to the position that they were continuously monitoring Carefree for additional information. This is not the case. In both their motion to dismiss and reply, State Farm maintained its argument that the 2013 Provider-Recaps report which recommended against "project prioritization" ended any causal chain as the last specific fact involving race alleged by Carefree. (ECF 101 ¶ 94; ECF 104-1 at 12; ECF 106 at 6-7). It was only after Carefree contended, in their opposition, that race could have been "the *only* basis" for the State Farm companies' "continued pursuit of a claim against the Providers," because all non-racial issues as to treatment and billing practices were determined to be meritless in 2013, that State Farm clarified their review process. State Farm's position, consistent with their argument in the motion to dismiss, was that the 2013 document led the companies to not prioritize an investigation at that time, but did not clear Carefree of wrongdoing, and that the subsequent decision in 2018 to deny certain claims was based on a different employee's conclusions regarding the alleged fraud. (ECF 104 at 8). It is Carefree, and not State Farm, that characterizes State Farm's investigations as "continuous" (ECF 105 at 10 n.4) in a manner inconsistent with the allegations actually pled in the corrected amended complaint (*see* ECF 101 ¶¶ 98-101 (describing the earlier review as distinct from the 2015-2018 investigation)). Thus, State Farm did not raise a novel issue of fact, but rather responded to an argument raised by Carefree in their response brief. In such instances when a reply "merely responds to [the defendants'] arguments," a request to file a surreply inappropriately "seek[s] to reopen briefing" and will be denied. *Agelli v. Sebelius*, No. 13-cv-497, 2014 WL 347630, at *11 (D. Md. Jan. 30, 2014).[4]

### 2. Full and Equal Benefit Claim

---

[4] Unpublished opinions are cited for the persuasiveness of their reasoning, not for any precedential value.

Second, Carefree contends that State Farm raises, for the first time in their reply, the argument that Carefree has not pled a "full and equal benefit" claim under § 1981(a), and alternatively, that state action is required for such a claim. *See* 42 U.S.C. § 1981(a) (providing that all persons shall have the same right "to make and enforce contracts, to sue, be parties, give evidence, and to the *full and equal benefit of all laws and proceedings for the security of persons and property*") (emphasis added).

Carefree, however, failed to plead a claim under the "full and equal benefits" clause of § 1981(a) in their counterclaim. While the federal pleading standard is not insurmountable, claimants must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). No such statement can be found bringing a claim under the "full and equal benefit" clause of § 1981(a). While the counterclaim does not explicitly invoke one or more subsections of § 1981, the plain text of the complaint only can be fairly read to invoke only the portion of § 1981(a) providing all persons under the jurisdiction of the United States the same right to "make and enforce contracts." While Count 1 of the counterclaim repeatedly references Carefree's contractual relationships with their clients and State Farm (*see* ECF 101 ¶¶ 116-17), their bills for treatment (*id.* ¶¶ 118, 120), and being "prevented [] from enjoying the benefits, privileges, terms and conditions of their contractual relationships with their own patients" (*id.* ¶ 119),[5] it fails to mention any other benefit with which State Farm interfered.[6]

Upon Carefree's attempt to litigate their claim as if they had properly pled a violation of their enjoyment of full and equal benefit of the laws under 42 U.S.C. § 1981(a), State Farm merely

---

[5] This language parrots the portion of 42 U.S.C. § 1981(b), which defines "make and enforce contracts" to include "the enjoyment of all *benefits, privileges, terms, and conditions of the contractual relationship." Id.*(emphasis added).

[6] Carefree's reference to their "federally protected rights" (*id.* ¶ 121) neither is sufficiently specific enough to invoke the "full and equal benefits" clause nor purports to cover all such rights guaranteed by 42 U.S.C. § 1981(a), regardless of the interpretation of the counterclaim Carefree advances in their opposition (*see* ECF 105-1 at 16).

9

pointed out in their reply that Carefree had not met their burden to properly plead such a claim in their amended counterclaim. As was the case with Carefree's causation argument, State Farm did not raise a novel issue of law, but rather responded to a proscribed attempt to revise Carefree's claim through briefing.[7] (*See* ECF 105 at 16).

As neither issue of law nor fact that Carefree proffers were matters actually raised for the first time in State Farm's reply, Carefree's motion for leave to file a surreply will be denied.

## CONCLUSION

As explained above, the court will grant State Farm's motion to dismiss Carefree's corrected amended counterclaim, and deny Carefree's motion for leave to file a surreply.

A separate Order follows.

__8/4/22__
Date

__CCB__
Catherine C. Blake
United States District Judge

---

[7] Because the court finds that Carefree failed to plead a claim under the "full and equal benefit" clause of 42 U.S.C. § 1981(a), there is no need to determine whether such a claim would require state action to avoid dismissal on the merits.